UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAGIE MALARO, and<br>ANTHONY MALARO,<br><br>    Plaintiffs,<br><br>v.<br><br>ROGER WILKIE, JR., Individually and as Owner<br>of ROGER WILKIE, JR., BUILDER, INC.,<br><br>    Defendants. | )<br>)<br>) CIVIL ACTION NO.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT AND JURY DEMAND

## INTRODUCTION

This action involves claims brought by Magie and Anthony Malaro (hereinafter jointly, the "Malaros" or "Plaintiffs") against Roger Wilkie, Jr., individually and as owner of Roger Wilkie, Jr., Builder, Inc. (hereinafter jointly, "Wilkie" or "Defendants") arising out of renovation work (the "Project") conducted on the Malaro's home located at 922 Drift Road, Westport, MA (the "Premises").

## PARTIES

1. The Plaintiff, Magie Malaro, is an individual and resident of Westport, Bristol County, Massachusetts.

2. The Plaintiff, Anthony Malaro, is an individual and resident of Westport, Bristol County, Massachusetts.

3. Upon information and belief, the Defendant, Roger Wilkie, Jr., is an individual with a primary residence in Tiverton, RI.

4. Upon information and belief, the Defendant, Roger Wilkie, Jr., Builder, Inc., is a foreign corporation with a principal place of business located at 558 Fish Road, Tiverton, RI 02878.

## JURISDICTION

5. Diversity jurisdiction lies in this Court pursuant to 28 U.S.C. § 1332. Plaintiffs and Defendants are citizens of different states. As the Plaintiffs are citizens of Massachusetts, the Defendants are citizens of Rhode Island, and the amount in controversy exceeds $75,000.00, jurisdiction is proper.

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to these claims occurred in this District, and the Premises is situated in the District.

## FACTUAL BACKGROUND

7. In or around 2020, the Malaros decided to renovate the Premises.

8. The Malaros began discussions with contractors to renovate the Premises, and eventually contacted Wilkie.

9. The Malaros discussed the Project with Wilkie, who expressed confidence that he could complete the Project for $175,000.00, including materials and labor but excluding kitchen appliances.

10. Wilkie also informed the Malaros that the Project would be completed by April of 2021.

11. In reasonable reliance upon the accuracy of these cost and time estimates, the Malaros agreed to hire Wilkie for the Project.

12. Wilkie never provided the Malaros with a written contract pursuant to Chapter 142A.

13. Since Wilkie never provided the Malaros with a written contract, the Malaros wrote out a scope of work applicable to the Project. [Ex. A, Scope of Work for Wilkie.]

14. The scope of work for the Project included renovations to the kitchen, hallway, dining room, and the Malaros' respective offices. [Ex. B, Architectural Drawings, Demolition Drawings, and Photographs of Rooms Prior to Renovations.]

15. Accordingly, Wilkie began the renovations on the Premises.

16. Notwithstanding Wilkie's professed expertise and proficiencies, Wilkie made very little progress on the Project, failed to consistently show up to the Premises, and sent a laborer to the Premises who performed deficient work.

17. Indeed, the Malaros consistently had trouble reaching Wilkie throughout the course of the Project, as he rarely visited the Premises and frequently did not respond to the Malaro's attempts at communication.

18. On several occasions, the Malaros requested billing documentation to determine the costs incurred by the Project thus far.  They did not receive a response from Wilkie.

19. By April 2021, when Wilkie claimed he would have the Project completed for the Malaros, none of the rooms detailed in the scope of work for the Project were completed.

20. On April 13, 2021, the Malaros emailed Wilkie, stating in part:

    With regards to the billing [Mr. Malaro] and I have ask [sic] several times for an account of what we owe thus far.  I know the project is far from complete however we do not want to go over our budget.  Please submit your bill for all time and materials include [sic] the appliance install by May 1, 2021.

    [Ex. C, 04/13/21 Email from the Malaros to Wilkie.]

21. The Malaros never received a response from Wilkie to their April 13, 2021 email request for billing related to the Project.

22. On June 1, 2021, the Malaros sent an email to Wilkie seeking updates on the first-floor completion date, the appliances, and the T&M status.  [Ex. D, 06/01/21 E-mail from the Malaros to Wilkie.]  They did not receive a verbal or written response.

23. On August 30, 2021, the Malaros received the first set of bills from Wilkie.

24. Notwithstanding that the Malaros requested invoices pertaining to Wilkie's work on the Project since its commencement, Wilkie waited approximately one year before providing any documentation pertaining to his alleged costs incurred from the Project.

25. In response, on August 30, 2021, the Malaros wrote a letter to Wilkie, expressing concerns with the amount that they have paid thus far and the limited progress of the Project.  [Ex. E, 08/30/21 Letter from the Malaros to Wilkie.]  The Malaros stated as follows, in pertinent part:

    The attached checks cover what you have thus far billed us for.  However, given the state of completion we find the labor costs to be far beyond the amount of work that has actually been completed.  This project was to be completed March or April then pushed to June.  It is now almost September and there is not one room completed.

    [*Id.*]

26. Notwithstanding that Wilkie agreed to pay for materials prior to the commencement of the Project, the Malaros included a list of items that they paid for out-of-pocket to advance Wilkie's progress as he had not completed any room by the end of August 2021 – two months after Wilkie had promised that the Project would be completed.

27. The incurred materials expenses by the Malaros include the following:

- All kitchen floor tile;
- All kitchen back splash tile;
- Kitchen sinks and garbage disposals and drains;
- All kitchen fans and center lights;
- All kitchen appliances;
- All kitchen counters;
- Most of the kitchen registers;
- All kitchen faucets and soap dispensers;
- Electric fireplace;
- Wall tile and adhesive for the tile around the fireplace;
- Light fixtures and sconces in the living room;
- Vanity and sinks in the bathroom;
- Lights for the bathroom;
- Bathroom faucets;
- Shower faucets;
- Wall tile and floor tile and trim tile for the bathroom;
- Marble bench for the steam shower;
- All steam shower equipment;
- Toilet for the bathroom;
- Towel rack, hooks for bathroom;
- Ceiling tile plates for Mr. Malaro's office; and
- All tile for Ms. Malaro's office.

[*Id*.]

28. Finally, on February 12, 2022, the Malaros sent a letter to Wilkie, stating in part that Wilkie failed to communicate with them throughout the duration of the Project, that they received a large batch of invoices, and that the Project exceeded the original budget. [Ex. F, 02/12/22 Letter from Malaros to Wilkie.]

29. The Malaros enclosed six checks with their February 12, 2022 letter: (1) $22,023.97; (2) $21,541.58; (3) $27,890.00; (4) $5,135.00; (5) $808.38; and (6) $5,562.90.

30. Indeed, by February 12, 2022, the Malaros paid a stunning $77,058.69 over the original estimate, notwithstanding their costs for all materials.

31. In total, the Malaros paid $269,061.25 for a project that was estimated to cost $175,000.00.

32. Worse yet, by February 2022, the Project was nowhere near completed.

33. Wilkie repeatedly billed for work not requested nor approved, and which was not required to complete the agreed upon scope of work for the Project.

34. Wilkie's invoices did not match his estimated budget.

35. As a direct result of Wilkie's delays, Plaintiffs suffered losses associated with relocation in excess of $162,000.00.

36. As a direct result of Wilkie's deficient and incomplete work, Plaintiffs suffered losses in excess of $25,000.00.

37. As a direct result of Wilkie's overcharging, Plaintiffs suffered losses in excess of $94,000.00.

## COUNT I – BREACH OF CONTRACT
**[Malaros v. Defendants Roger Wilkie, Jr. and Roger Wilkie, Jr., Builder, Inc.]**

38. Plaintiffs incorporate Paragraphs 1-37 by reference as if set forth fully herein.

39. Defendants agreed to complete renovations on the Premises as detailed by the scope of work in exchange for $175,000.00.

40. Defendants failed to perform and/or complete the renovations on the Premises, constituting breaches of the contract and a breach of the covenant of good faith and fair dealing.

41. As a direct and proximate result of the Defendants' breach and excessive billing, Plaintiffs have suffered substantial damages in excess of $281,000.00.

## COUNT II – FRAUDULENT MISREPRESENTATION
**[Malaros v. Defendants Roger Wilkie, Jr. and Roger Wilkie, Jr., Builder, Inc.]**

42. Plaintiffs incorporate Paragraphs 1-41 by reference as if set forth fully herein.

43. In the course of securing the agreement to complete the Project on the Premises, and throughout the renovation, Wilkie, individually and on behalf of Roger Wilkie, Jr. Builder, Inc., made several representations to the Plaintiffs, including but not limited to:

    a. Agreeing to complete the Scope of Work within or reasonably close to the $175,000.00 budget provided by the Plaintiffs;

    b. Stating that time billed on his invoices would be accurate, necessary, and authorized;

    c. Stating that all work completed on the Premises would be competent and efficient;

    d. Representing that his team at Roger Wilkie Jr, Builder, Inc. would be proficient at conducting the work necessary to complete the renovations at the Premises;

    e. Agreeing to be consistently present at the Premises to supervise, implement, and facilitate the renovations; and

    f. Agreeing to complete the Project by April of 2021.

44. Plaintiffs reasonably relied upon these statements in hiring Defendants for the Project and paying for their services throughout the course of the Project.

45. Indeed, these statements were made with the intention of inducing Plaintiffs to hire Defendants.

46. These representations were false, and Wilkie knew that these representations were false at the time he made them.

47. As a direct and proximate result of the Defendants' fraudulent misrepresentation, Plaintiffs suffered substantial damages in excess of $281,000.00.

## COUNT III – CONVERSION
### [Malaros v. Defendants Roger Wilkie, Jr. and Roger Wilkie, Jr., Builder, Inc.]

48. Plaintiffs incorporate Paragraphs 1-47 by reference as if set forth fully herein.

49. Plaintiffs were induced to pay money to Wilkie with the understanding that the Defendants would complete the agreed upon renovations within the agreed upon budget.

50. Plaintiffs paid Wilkie $269,061.25 for a project that was estimated to cost $175,000.00, and the Premises is still far from completed.

51. Defendants did not complete the agreed upon scope of work and had no intention of completing the agreed upon scope of work for the budget of $175,000.00.

52. Defendants thereby converted these funds for their own benefit, and with the intention of depriving Plaintiffs of their property.

53. As a direct and proximate result of the conversion, Plaintiffs suffered substantial damages in excess of $281,000.00.

## COUNT IV – VIOLATION OF CHAPTER 142A
### [Malaros v. Defendants Roger Wilkie, Jr. and Roger Wilkie, Jr., Builder, Inc.]

54. Plaintiffs incorporate Paragraphs 1-53 by reference as if set forth fully herein.

55. Wilkie agreed to perform "residential contracting" on the Premises, as defined by M.G.L. c. 142A, § 1.

56. Plaintiffs are "owners" as defined by M.G.L. c. 142A, § 1.

57. Wilkie violated M.G.L. c. 142A, § 2(a) by failing to memorialize his agreement to perform residential contracting services in an amount in excess of one thousand dollars in writing, and accordingly violated M.G.L. c. 142A, *et seq.*

58. Wilkie similarly violated M.G.L. c. 142A, § 17 by doing the following:

    a. Abandoning or failing to perform, without justification, the Project;

    b. Deviating from or disregarding plans or specifications in material respects without the consent of Plaintiffs;

    c. Making material misrepresentations to Plaintiffs in the procurement of a contract to renovate the Premises or making false promises of a character likely to influence, persuade, or induce the procurement of a contract to renovate the Premises;

    d. Failing to pay for materials or services rendered in connection with Wilkie's operating as a contractor where he has received sufficient funds as payment for the Project; and

    e. Demanding or receiving payment in violation of M.G.L. c. 142A, § 2(a)(6).

59. As a direct and proximate result of the Chapter 142A violations, Plaintiffs suffered substantial damages in excess of $281,000.00.

## COUNT V – VIOLATION OF CHAPTER 93A
### [Malaros v. Defendant Roger Wilkie, Jr.]

60. Plaintiffs incorporate Paragraphs 1-59 by reference as if set forth fully herein.

61. On April 13, 2022, Plaintiffs served Wilkie with a Massachusetts General Law Chapter 93A demand (the "93A Demand") by certified mail.

62. The 93A Demand is incorporated by reference as if fully set forth herein.

63. Pursuant to M.G.L. c. 93A, § 9(3), "the demand requirements of this paragraph shall not apply […] if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth[.]"

64. Accordingly, Plaintiffs are not obligated to wait 30 days after serving their 93A Demand to file suit.

65. As set forth in the 93A Demand, Wilkie's conduct constitutes unfair and deceptive business practices in violation of M.G.L. c. 93A.

66. These unfair and deceptive acts were committed in the course of commerce.

67. Wilkie used deceptive statements and actions to induce and procure the contract to perform the Project on the Premises.

68. Wilkie used unfair and deceptive billing practices to disguise overbilling.

69. Wilkie used unfair and deceptive billing practices in billing for work that was not complete or not completed properly.

70. These unfair and deceptive practices were undertaken in connection to commerce or business.

71. These unfair and deceptive practices are violations of Chapter 93A.

72. Wilkie's Chapter 93A violations were willful, knowing, and/or reckless.

73. As a direct and proximate result of Wilkie's violations of Chapter 93A, Plaintiffs have suffered substantial damages in an amount to be proven at trial.

### COUNT VI – BREACH OF THE IMPLIED WARRANTY OF GOOD WORKMANSHIP
**[Malaros v. Defendants Roger Wilkie, Jr. and Roger Wilkie, Jr., Builder, Inc.]**

74. Plaintiffs incorporate Paragraphs 1-73 by reference as if set forth fully herein.

75. Wilkie's agreement to undertake the Project included an implied warranty to complete the work in a good and workmanlike manner.

76. Wilkie failed to complete the work in a good and workmanlike manner by, *inter alia*, performing defective work on the Premises.

77. Wilkie's failure constitutes a breach of the implied warranty of good workmanship.

78. As a direct and proximate result of Wilkie's breach of the implied warranty of good workmanship, Plaintiffs have suffered substantial damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Honorable Court enter the following relief:

- All damages resulting from the Defendants' breach of contract, in an amount to be determined in a trial of this Action.

- All damages resulting from Wilkie's fraudulent misrepresentations, in an amount to be determined in a trial of this Action.

- All damages resulting from Wilkie's conversion of the Hamilton's funds, in an amount to be determined in a trial of this Action.

- All damages resulting from Wilkie's violations of Chapter 142A, in an amount to be determined in a trial of this Action.

- All damages resulting from Wilkie's violations of Chapter 93A, in an amount to be determined in a trial of this Action.

- Attorney's fees incurred in connection with this action pursuant to Chapter 93A.

- Double or Treble damages in connection with this action pursuant to Chapter 93A.

Respectfully submitted,
MAGIE MALARO AND
ANTHONY MALARO,
By their Attorneys,

*/s/ Jonathon D. Friedmann*
Jonathon D. Friedmann, BBO #180130
Casey A. Sack, BBO #708448
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02114
Ph: 617-723-7700
jfriedmann@rflawyers.com
csack@rflawyers.com

Date: April 13, 2022